UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: _____

XYNERGY HEALTHCARE CAPITAL II, LLC,

    Plaintiff,

vs.

REVOLUTION MONITORING MANAGEMENT,
LLC and REVOLUTION NEUROMONITORING,
LLC,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Xynergy Healthcare Capital II, LLC ("Xynergy") brings this action against Revolution Monitoring Management, LLC ("Revolution Monitoring Management") and Revolution Neuromonitoring, LLC ("Revolution Neuro") (together, "Defendants"), and alleges as follows:

## PARTIES

1. Xynergy is a Florida limited liability company with its principal place of business located in Boca Raton, Palm Beach County, Florida.

2. Xynergy is wholly owned by Xynergy Capital Group, LLC ("XCG"), which is also a Florida limited liability company. In turn, XCG is owned by two members: (a) Xynergy Capital, Inc., a Florida corporation with its principal place of business located in Boca Raton, Palm Beach County, Florida, and (b) Xynergy Equity, LLC ("Xynergy Equity"), a Florida limited liability company. Xynergy Equity is wholly owned by Umbach Financial Group, LLC, a Florida limited

liability company. Umbach Financial Group, LLC is wholly owned by Joseph Umbach, who is a resident of Florida.

3. Revolution Monitoring Management is a Delaware limited liability company with its principal place of business located in Dallas, Dallas County, Texas.

4. Revolution Neuro is a Delaware limited liability company with its principal place of business located in Dallas, Dallas County, Texas.

5. Jeremiah Vance is a resident of Texas and is *sui juris*. Mr. Vance is the sole owner and member of Defendants.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332(a). The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and this civil action is between citizens of different states.

7. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within Palm Beach County, Florida.

8. Defendants are each subject to the jurisdiction of this Court pursuant to Fla. Stat. § 48.193 by *inter alia* operating, conducting, engaging in, or carrying on a business or business venture in this state, having an office or agency in this state, committing tortious acts within this state and breaching a contract in this state by failing to perform acts required by the contract to be performed in this state. Moreover, Defendants caused injury to persons or property within this state arising out of an act or omission by Defendants outside this state.

9. Additionally, and pursuant to Fla. Stat. §§ 685.101–02, each of the Defendants has contracted to venue and *in personam* jurisdiction in this Court for any action brought by Xynergy under the contracts at issue herein.

## FACTUAL ALLEGATIONS

### I. THE FACTORING AGREEMENT AND CHASE SWEEP PROCEDURE.

10. Xynergy is engaged in the business of factoring. Under factoring agreements to which it is a party, Xynergy will purchase from its clients accounts receivable (i.e., invoices) at a discount and in turn will immediately advance to the client an agreed upon percentage of the amount that would otherwise be owed on the receivable. The amounts advanced by Xynergy are then repaid to Xynergy once payment is ultimately made on the invoices. The payments on the receivables are deposited into an agreed upon bank account of the client and Xynergy is then authorized to sweep the payments into its own bank account. This relationship allows Xynergy's clients to efficiently run their businesses by providing them with a stable cash flow.

11. On or about November 22, 2016, Xynergy, Revolution Monitoring Management and Revolution Neuro entered into a Healthcare Receivables Master Purchase and Sale Agreement (the "Factoring Agreement"). A copy of the Factoring Agreement is attached hereto as **EXHIBIT "A"**.

12. Under § 1 of the Factoring Agreement, Defendants agreed to sell their accounts receivable and rights to payment to Xynergy. To ensure repayment of any sums advanced by Xynergy, Defendants agreed in § 9 of the Factoring Agreement to grant Xynergy a first priority security interest in Defendants' assets, including all owned, existing or thereafter acquired accounts, and all receivables and rights to payment.

13. Pursuant to § 6 of the Factoring Agreement, in the event Xynergy did not receive payment upon a receivable it purchased within 120 days, Defendants were then obligated to repurchase the receivable from Xynergy at a price defined as the "Repurchase Price."

14. On or about November 22, 2016, Xynergy and Defendants entered into a Wholesale Lockbox Deposit and Account Service Agreement With Provider (the "Lockbox Agreement"). A copy of the Lockbox Agreement is attached hereto as **EXHIBIT "B"**.

15. Among other things, the Lockbox Agreement provides for SunTrust Bank, N.A. ("SunTrust") to establish post office boxes to collect payments of receivables owing to Defendants. *See* Lockbox Agreement § 1. Defendants explicitly disclaimed any interest in payments made into the post office boxes, and SunTrust was instructed to deposit such payments into bank accounts designated by Xynergy. *See id.* at §§ 2–3.

16. Following execution of the Lockbox Agreement, Defendants, who bank at JPMorgan Chase & Co. ("Chase"), requested to Xynergy that they not be required to open bank accounts at SunTrust. To provide Xynergy with the protections bargained for under the Lockbox Agreement, Defendants offered to provide Xynergy with full access to their accounts at Chase (the "Chase Accounts"), and permit Xynergy to manually transfers monies in the Chase Accounts to Xynergy's own bank accounts. This agreement allowed Xynergy to view the amounts of receivables being paid to Defendants and also enabled Xynergy to sweep the account and transfer funds—i.e. Xynergy's collateral—from Chase and into Xynergy's own bank account.

17. On December 20, 2016, the president of Xynergy, Alejandro Nathan, e-mailed Mr. Vance: "As we discussed back on Friday the 2nd on the phone, the solution we found with our bank to avoid having to re-notify all of your debtors. We will have full online access to Chase to be able to view the amounts of payments coming and know the balance of the day. We will initiate

what is called a wire drawdown from our Suntrust [sic] terminal 'pulling' out the funds from Chase into our own account." That e-mail, along with follow-up e-mails between Xynergy, Defendants and Chase establishing the sweep relationship are attached hereto as **EXHIBIT "C"**.

18. On or about December 23, 2016, Xynergy executed funds transfer agreements permitting repetitive sweeps from the Chase Accounts to an account titled in the name of Xynergy (the "Funds Transfer Agreements"). Copies of the Funds Transfer Agreements are attached hereto as **EXHIBIT "D"**.

19. In or around January 2017, Xynergy and Defendants finalized the sweep procedure from the Chase Accounts to Xynergy's account. Beginning in or around this time, Xynergy would review the Chase accounts and transfer the balances to its SunTrust account on a daily basis.

## II. XYNERGY PERFECTS ITS SECURITY INTERESTS.

20. Xynergy perfected its first priority security interests under the Factoring Agreement, as required by applicable state law, in the assets of Defendants by filing UCC Financing statements as follows: (a) a UCC Financing Statement in the Office of the Delaware Department of State naming Revolution Monitoring Management as debtor and Xynergy as secured party, and (b) a UCC Financing Statement in the Office of the Delaware Department of State naming Revolution Neuro as debtor and Xynergy as secured party (together, the "UCC Filings"). Copies of the UCC Filings are attached hereto as **EXHIBIT "E"**.

## III. DEFENDANTS BREACH THE CONTRACTS.

21. As of August 2017, more than fifty percent (50%) of the Purchased Accounts (as such term is defined in the Factoring Agreement) are more than 120 days past due. As such, pursuant to § 6 of the Factoring Agreement, Defendants are obligated to repurchase such accounts from Xynergy at the Repurchase Price.

22. Despite being noticed of this requirement, Defendants have failed to repurchase these delinquent accounts and they have defaulted under the Factoring Agreement.

23. On or about August 8, 2017, Xynergy issued correspondence to Defendants notifying them of their defaults under the Factoring Agreement. A copy of this correspondence is attached as **EXHIBIT "F"**.

24. Upon information and belief, also in violation of the Factoring Agreement, Defendants have ceased to direct receivables to be paid into the Chase Accounts. Despite having over $32 million in outstanding receivables, as of August 31, 2017, the aggregate balance of the Chase Accounts is only $766.34. Xynergy is concerned Defendants may be diverting payments (i.e., Xynergy's collateral) to an account that Xynergy does not have access to. Moreover, in contravention of the e-mails and Sweep Agreements referenced in ¶¶ 18–22 hereinabove, Xynergy has been prohibited access to the Chase Accounts to review account balances and initiate sweeps of the account.

25. On August 31, 2017, Alejandro Nathan e-mailed Mr. Vance and formally requested that Defendants immediately deliver all books and records regarding accounts receivable pursuant to §§ 3.3 and 8(d) of the Factoring Agreement. Mr. Nathan also made demand that Defendants restore Xynergy with the ability to sweep the Chase Accounts, and that failure to comply with said demand will result in Xynergy "having no choice but to conclude that you are converting [its] collateral." A copy of this e-mailed is attached hereto as **EXHIBIT "G"**.

26. Defendants responded to the e-mail with conjecture and have not delivered the requested information about the condition of Xynergy's collateral. Nor have Defendants restored Xynergy's access to Defendants' Chase Accounts.

27. Finally, upon information and belief, without notifying Xynergy, Defendants are attempting to reach a bulk settlement with the obligors of their outstanding receivables; in short, Defendants are orchestrating a fire sale liquidation of receivables that no longer even belong to them as they were previously sold to Xynergy or are Xynergy's collateral.  This behavior too violates both the letter and spirit of the Factoring Agreement.  Moreover, a fire sale compromises Xynergy's ability to collect amounts owing to it, as receivables—which, again, are Xynergy's collateral—may be sold for less than their face value.

28. As of August 29, 2017, Defendants are obligated to Xynergy under the terms of the Favoring Agreement in a total amount not less than $1,534,378.79, plus accruing interest, attorneys' fees and penalties under the Factoring Agreement.  The indebtedness described herein is in default.

29. Xynergy has made demand of the Defendants to pay all outstanding amounts due from them under the Factoring Agreement.  Notwithstanding such demands, Defendants have failed to pay and satisfy their obligations under the Factoring Agreement.

## COUNT I
### (Breach of Contract Against Defendants)

30. Xynergy realleges and incorporates paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31. The Factoring Agreement is a contract.

32. Defendants have breached the Factoring Agreement.

33. After all credits and adjustments, there is due and owing to Xynergy by Defendants under the Factoring Agreement the sum of $1,534,378.79 as of August 29, 2017, plus accruing interest, attorneys' fees and penalties under the Factoring Agreement.

34. Xynergy has been damaged in the amount of $1,534,378.79 as of August 29, 2017, plus accruing interest, attorneys' fees and penalties under the Factoring Agreement.

WHEREFORE, Xynergy requests that a judgment be entered in its favor and against Defendants as follows:

a. Awarding Xynergy a money judgment against Defendants in the amount of $1,534,378.79, plus accruing interest, attorneys' fees and penalties under the Contracts;

b. Awarding Xynergy its costs and reasonable attorneys' fees; and

c. Awarding Xynergy such other and further relief as this Court deems appropriate.

Respectfully Submitted,

**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for Xynergy Healthcare Capital II, LLC
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: plandau@slp.law
Email: pdorsey@slp.law

By: */s/ Philip J. Landau*
　　　Philip J. Landau, Esq.
　　　Fla. Bar. No. 0504017
　　　Patrick Dorsey, Esq.
　　　Fla. Bar. No. 0085841